UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: Taylor, Darel Eugene | ) | |
| | ) | Case No.: 15-80968 |
| Debtor | ) | Chapter 13 |

## MOTION TO SELL PROPERTY OTHER THAN
## IN THE ORDINARY COURSE OF BUSINESS

**COMES NOW** the above-named Debtor, and pursuant to the provisions of 11 U.S.C. § 363(b), files this Motion for authority to sell property of the estate other than in the ordinary course of business. The property will be sold free and clear of all liens, mortgages and interests of other entities pursuant to the provisions of 11 U.S.C. § 363(f). The Debtor would show to the court:

1. The Debtor has entered into a Contract to sell certain real estate located at 205 E. Main Street, City of Ada, Oklahoma, for the sum of $125,000.00. A copy of the Contract for Sale is attached hereto and the terms of same are incorporated herein as if set forth in full.

2. The legal description of the property to be sold is as follows:

> All of Lot 14, Block 96, Original Townsite of the City of Ada, Pontotoc County, State of Oklahoma, according to the official plat and survey thereof.

3. The property shall be sold free and clear of all liens, mortgages or interest of the following entities, more particularly described as follows:

| NAME OF ENTITY | CLAIMED INTEREST |
|---|---|
| Discover Bank | Statement of Judgment, case no. C-07-57, filed on 5-5-2008, Book JO8, Page 151, Pontotoc County Clerk. |
| Discover Bank | Statement of Judgment, case no. C-07-57, filed on 5-6-2009, Book JO9, Page 110, Pontotoc County Clerk. |
| Internal Revenue Service | Tax lien filed on 3-23-2012, Book 6, Page 24, Pontotoc County Clerk. |
| Discover Bank | Renewal of Judgment on 3-26-2012, case no. C-07-57, filed on 3-26-12, Book JO9, Page 110, Pontotoc County Clerk |
| Oklahoma Tax Commission | Tax warrant, filed on 3-27-12, Book 6, Page 77, Pontotoc County Clerk. |
| Internal Revenue Service | Tax lien filed on 12-31-2013, Book 6, Page 77, Pontotoc County Clerk. |

| | |
|---|---|
| Discover Bank | Renewal of Judgment, case no. C-07-57, filed on 3-26-12, Book JO8, Page 151, Pontotoc County Clerk |
| B. Marilyn Steen, Trustee of The Betsy Marilyn Steen Family Trust | Statement of Judgment, filed on 10-3-2013, case no. CJ-13-97, Book J13, Page 254, Pontotoc County Clerk |
| Citizen Bank of Ada | Statement of Judgment, case no. CJ-12-144, filed on 2-28-2014, Book J14, Page 39, Pontotoc County Clerk. |
| Oklahoma Tax Commission | Tax warrant, filed on 12-22-14, Book J14, Page 572, Pontotoc County Clerk. |
| Taylor Vending Inc. | Interest is Unknown |
| Vistar Corporation | Interest is Unknown |
| First United Bank and Trust | Interest is Unknown |
| Patrick J. Taylor | Interest is Unknown |
| Christopher L. Taylor | Interest is Unknown |
| Glenda Gonderman, Pontotoc County Treasurer | Interest is Unknown |
| Board of County Commissioners of Pontotoc County | Interest is Unknown |
| Boom A Rang Diner of Ada | Interest is Unknown |

4. Proceeds from the sale of the above described property will be distributed as follows:

a. First: all reasonable and customary closing costs, including but not limited to the realtor fee as provided in the Listing Agreement with Alliance Realty Inc., dba Berkshire Hathaway HomeServices Anderson Properties.

b. Second: The sum of $216.56 to Jimmy L. Veith, P.C., the attorney for the Debtor, who advanced the court costs and postage for the filing of this Motion and Amended Creditor Matrix.

c. Third: the first mortgage held by the Dexter Alvin Pruitt Trust.

d. Fourth: The balance of the proceeds will be paid to the William M. Bonney, the Chapter 13 Trustee for the Eastern District of Oklahoma, in this case filed by Darel Eugene Taylor, Case No.: 15-80968. These proceeds shall be distributed pursuant to an Amended Chapter 13 Plan to be filed by the Debtor after it is confirmed by this Court

**WHEREFORE,** Debtor prays for authority to sell the above-described property under the terms set forth in this Motion to Sell and the Contract for Sale attached hereto.

/S/ *Jimmy L. Veith*
Jimmy L. Veith, PC
Attorney for Debtor
P.O. Box 607
Ardmore, OK 73402
Phone: (580)226-2353
Fax: (580)226-2819

Property Address 205 E Main St, Ada, OK 74820-5603

**OKLAHOMA REAL ESTATE COMMISSION**
*This is a legally binding Contract; if not understood, seek advice from an attorney.*
**OKLAHOMA UNIFORM CONTRACT OF SALE OF REAL ESTATE**
# COMMERCIAL IMPROVED

**CONTRACT DOCUMENTS.** The Contract is defined as this document with the following attachment(s):
(check as applicable)
  **X**  Financing Supplement         ___ Supplement
  ___ Exhibit _____            ___ _____

**PARTIES. THE CONTRACT is entered into between:**
_____**DAREL E. TAYLOR**_____ "Seller," and
_____**THE TAGDV TRUST**_____ "Buyer".

The Parties' signatures at the end of the Contract, which includes any attachments or documents incorporated by reference, with delivery to their respective Brokers, if applicable, will create a valid and binding Contract, which sets forth their complete understanding of the terms of the Contract. This agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and permitted assigns. The Contract shall be executed by original signatures of the Parties or by signatures as reflected on separate identical Contract counterparts (carbon, photo, fax or other electronic copy). The Parties agree that as to all aspects of this transaction involving documents an electronic signature shall have the same force and effect as an original signature pursuant to the provisions of the Uniform Electronic Transactions Act, 12A, Oklahoma Statutes, Section 15-101 et seq. All prior verbal or written negotiations, representations and agreements are superseded by the Contract, which may only be modified or assigned by a further written agreement of Buyer and Seller.

The Parties agree that all notices and documents provided for in this contract shall be delivered to the Parties or their respective brokers, if applicable. Seller agrees to sell and convey by General Warranty Deed, and Buyer agrees to accept such deed and buy the Property described herein, on the following terms and conditions:

The Property shall consist of the following described real estate located in _____**Pontotoc**_____ County, Oklahoma.
**1. LEGAL DESCRIPTION. LOT 14 BLOCK 96 ORIGINAL TO ADA**
_____
_____
_____
_____

**Property Address** _____**205 E Main St**_____ **City** ____**Ada**____ **Zip 74820-5603**
Together with all fixtures and improvements, and all appurtenances, subject to existing zoning ordinances, plat or deed restrictions, utility easements serving the Property, including all mineral rights owned by Seller unless expressly reserved by Seller in the Contract and excluding mineral rights previously reserved or conveyed of record (collectively referred to as "the Property".)

**2. PURCHASE PRICE, EARNEST MONEY AND SOURCE OF FUNDS.** This is [RET] a CASH TRANSACTION unless a Financing Supplement is attached. The Purchase Price is $ ~~100,000.00~~ /25,000 — payable by Buyer as follows: Buyer has paid $ **1,000.00** _____ as earnest money on execution of the Contract, and Buyer shall pay the balance of the purchase price and Buyer's closing costs at Closing. Upon execution of the Contract, the earnest money shall be deposited in the trust account of _____**HOME TITLE OF ADA**_____ or if left blank, the Listing Broker's trust account, as part payment of the purchase price and/or closing costs.

**3. CLOSING, FUNDING AND POSSESSION.** The Closing process includes execution of documents, delivery of deed and receipt of funds by Seller and shall be completed on or before _____**09/30/2016**_____ , ("Closing Date") or not later than ___**5**___ days (five [5] days if left blank) thereafter caused by a delay of the Closing process, or such later date as may be necessary in the Title Evidence Paragraph. Possession shall be transferred upon conclusion of Closing process unless otherwise provided below:
_____

In addition to costs and expenses otherwise required to be paid in accordance with terms of the Contract, Buyer shall pay Buyer's Closing fee, Buyer's recording fees, and all other expenses required from Buyer. Seller shall pay documentary stamps required, Seller's Closing fee, Seller's recording fees, if any, and all other expenses required from Seller. Funds required from Buyer and Seller at Closing shall be either cash, cashier's check or wire transfer.

**4. TIME PERIODS SPECIFIED IN CONTRACT.** Time periods for Investigations, Inspections and Reviews and Financing Supplement Agreement shall commence on _____ **(Time Reference Date)**, regardless of the date the Contract is signed by Buyer and Seller. The day after the **Time Reference Date** shall be counted as day one (1). If left blank, the **Time Reference Date** shall be the third day after the last date of signatures of the Parties.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2014)                                                        Page 1 of 6
Sweeney & Associates, 1320 Stonebridge Ada, OK 74820              Phone: (580)421-9911   Fax (580)421-9111   woods - taylor
Shane Sweeney          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 15-80968    Doc 97    Filed 06/09/16    Entered 06/09/16 15:26:44    Desc Main
                        Document      Page 3 of 9

Property Address 205 E Main St, Ada, OK 74820-5603

## 5. INVESTIGATIONS, INSPECTIONS AND REVIEWS.

A. The Buyer agrees and acknowledges that Seller, Seller's Broker and their licensed associates, are not experts regarding the condition of the Property. No representations, warranties, or guarantees regarding the condition of the Property, or environmental hazards, are expressed or implied except as may be specified by Seller in the additional provisions in Paragraph 11.

B. Buyer shall have ____14____ days (ten [10] days if left blank) after the **Time Reference Date** to complete any investigations, inspections, and reviews. Seller shall have water, gas and electricity turned on and serving the Property for the Buyer's inspections, and through the date of possession or Closing, whichever occurs first. If required by ordinance, Seller, or Seller's Broker, if applicable, shall deliver to Buyer, in care of Buyer's Broker, if applicable, within five (5) days after the **Time Reference Date** any written notices affecting the Property.

C. Buyer, at Buyer's expense, shall have the right to enter upon the Property, together with Buyer's representative(s), independent contractor(s) and/or any other person Buyer deems qualified, to conduct any and all investigations, inspections, tests, studies and reviews. Excepting only the negligence of Seller or a condition caused or permitted by Seller, Buyer shall indemnify, protect, defend and hold Seller harmless from and against any and all claims, demands, losses, liabilities, costs, fees and expenses (including attorney's and consultant's fees) arising out of or related to Buyer's entry onto the Property in connection with any testing or investigation performed pursuant to this Contract. Buyer's investigations, inspections and reviews may include, but may not be limited to, the following:
   1) **Flood, Storm Water Run-off, Storm Sewer Back-up or Water History**
   2) **Environmental Risks.** Including, but not limited to soil, air, water, hydrocarbon, chemical, carbon, asbestos, mold, radon gas and lead-based paint
   3) **Roof.** Structural members, roof decking, coverings and related components
   4) **Structural Inspection**
   5) **Use of Property.** Property use restrictions, building restrictions, easements, restrictive covenants, zoning ordinances and regulations
   6) **Square Footage/Acreage.** Buyer shall not rely on any quoted square footage and/or acreage and shall have the right to measure the Property.

D. **EQUIPMENT.** Within __14__ days (ten [10] if left blank) from the **Time Reference Date** of this Contract, Buyer, at Buyer's expense, shall have the right to inspect all fixtures and equipment relating to plumbing, heating and cooling, electrical systems and any other equipment or systems and shall report any item not in normal working order, in writing, to Seller, in care of Seller's Broker, if applicable, including a copy of the estimated cost to repair such items. If the total estimated cost to Seller of such repairs and replacement required by this paragraph exceeds $ **1,000.00** _____ , Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay repair and replacement costs in excess of such amount.

E. **WOOD DESTROYING INSECTS INSPECTION.** Within ____14____ days (ten(10) if left blank) from the **Time Reference Date** of this Contract, Buyer shall have the right to have the Property inspected by Buyer's choice of a ~~exterminating company and deliver to Seller, in care of Seller's Broker, if applicable, an infestation report~~. The expense of such report shall be the Buyer's expense. In the event the report shows visible infestation or visible damage, Seller agrees, at Seller's expense, to treat and/or repair same, provided the estimated cost to cure such infestation or damage does not exceed $ **500.00** _____ . If the estimated cost exceeds such amount, Seller shall have the option to cancel and terminate this Contract within forty-eight (48) hours of being advised of such estimate unless Buyer agrees, in writing, to pay any costs in excess of such amount.

F. **BUYER'S RIGHT TO CANCEL.** If, upon Buyer's investigation, inspections and reviews, the Buyer determines that the Property is not suitable for Buyer's intended use, the Buyer may cancel and terminate this Contract and receive a refund of the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, as provided in Paragraph 17 within twenty-four (24) hours of the expiration of the time period specified in this provision.

## 6. RISK OF LOSS.
Until transfer of Title or transfer of possession, risk of loss to the Property, ordinary wear and tear excepted, shall be upon Seller; after transfer of Title or transfer of possession, risk of loss shall be upon Buyer. (Parties are advised to address insurance coverage regarding transfer of possession prior to Closing.)

## 7. NON-FOREIGN SELLER.
Seller represents that at the time of acceptance of this contract and at the time of Closing, Seller is not a "foreign person" as such term is defined in the Foreign Investments in Real Property Tax Act of 1980 (26 USC Section 1445(f) et. Sec) ("FIRPTA"). If either the sales price of the property exceeds $300,000.00 or the buyer does not intend to use the property as a primary residence then, at the Closing, and as a condition thereto, Seller, shall furnish to Buyer an affidavit, in a form and substance acceptable to Buyer, signed under penalty of perjury containing Seller's United States Social Security and/or taxpayer identification numbers and a declaration to the effect that Seller is not a foreign person within the meaning of Section "FIRPTA."

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2014) Page 2 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    woods-taylor

Case 15-80968    Doc 97    Filed 06/09/16    Entered 06/09/16 15:26:44    Desc Main
Document    Page 4 of 9

Property Address **205 E Main St, Ada, OK 74820-5603**

**8. ACCEPTANCE OF PROPERTY.** Buyer, upon accepting Title or transfer of possession of the Property, shall be deemed to have accepted the Property in its then condition. No warranties, expressed or implied, by Sellers, or Seller's Broker and/or their associated licensees, with reference to the condition of the Property, shall be deemed to survive the Closing.

**9. TITLE EVIDENCE.** Seller shall furnish Buyer title evidence covering the Property. Such title evidence shall be in the form of:

   (check one or both)
   [X] **SURFACE RIGHTS ABSTRACT (A below)**
   [ ] **TITLE INSURANCE COMMITMENT AND SURVEY (B below)**

   **A. SURFACE RIGHTS ABSTRACT**
   1) Seller, at Seller's expense, within thirty (30) days prior to Closing Date, agrees to make available to Buyer the following (collectively referred to as "the Title Evidence"):
      a) A complete surface-rights-only Abstract of Title, last certified to a date subsequent to the **Time Reference Date**, by an Oklahoma licensed and bonded abstract company; and
      b) A current Uniform Commercial Code Search Certificate
   2) **LAND OR BOUNDARY SURVEY.** Seller agrees that Buyer, at (check one) [X] Buyer's [ ] Seller's expense, may have a licensed surveyor enter upon the Property to perform a Land or Boundary (Pin Stake) Survey that shall then be considered as part of the Title Evidence.
   3) **BUYER TO EXAMINE TITLE EVIDENCE.**
      a) Buyer shall have ten (10) days after receipt to examine the Title Evidence and to deliver Buyer's objections to Title to Seller or Seller's Broker, if applicable. In the event the Title Evidence is not made available to Buyer within ten (10) days prior to Closing Date, said Closing Date shall be extended to allow Buyer the ten (10) days from receipt to examine the Title Evidence.
      b) Buyer agrees to accept Title subject to: (i) utility easements serving the Property, (ii) building and use restrictions of record, (iii) set back and building lines, (iv) zoning regulations, and (v) reserved and severed mineral rights, which shall not be considered objections for requirements of Title.
   4) **SELLER TO CORRECT ISSUES WITH TITLE (IF APPLICABLE); POSSIBLE CLOSING DELAY.** Upon receipt by Seller, or in care of Seller's Broker, if applicable, of any Title requirements reflected in an Attorney's Title Opinion or Title Insurance Commitment, based upon the standard of marketable title set out in the Title Examination Standards of the Oklahoma Bar Association, the Parties agree to the following:
      a) Seller, at Seller's expense, shall make reasonable efforts to obtain and/or execute all documents necessary to cure Title requirements identified by Buyer; and
      b) Delay Closing Date for _____30_____ days [thirty (30) days if left blank], or a longer period as may be agreed upon in writing, to allow Seller to cure Buyer's Title requirements. In the event Seller cures Buyer's objection prior to the delayed Closing Date, Buyer and Seller agree to close within five (5) days of notice of such cure. In the event that Title requirements are not cured within the time specified in this Paragraph, the Buyer may cancel the Contract and receive a refund of the earnest money.

   **B. TITLE INSURANCE COMMITMENT AND SURVEY**
   1) Seller, at [X] Buyer's [ ] Seller's expense (check one), (including the cost of pre-closing abstracting and the examiner's report) within _____ days after _____ shall furnish Buyer a Commitment for title insurance from a title insurance company acceptable to Buyer (the "Title Commitment"). The Title Commitment covering the Property shall be addressed to the Buyer and bind the title company to issue to Buyer, at closing, an American Land Title Association (ALTA) standard form Owner's Policy of Title Insurance (the "Title Policy"), in the amount of the purchase price. The Title Commitment shall set forth the status of the Title to the Property, showing and having attached copies of all liens, claims, encumbrances, easements, rights-of-way, encroachments, reservations, restrictions and any other matters affecting the Property.
   2) Seller, at [ ] Buyer's [ ] Seller's expense (check one), within _____ days after _____ shall furnish Buyer five (5) copies of a survey of the Property, prepared by a licensed surveyor, dated or updated no more than six (6) months prior to the **Time Reference Date** (the "Survey"). The Survey shall show:
      a) The boundary lines, dimensions and area of the land indicated thereon,
      b) The location of all fences, buildings, driveways, monuments, and other improvements located within the boundary lines,
      c) The location of all setback lines
      d) The location of all easements, alleys, streets, roads, rights-of-way, and other matters of record affecting such land, together with the instrument, book and page number indicated,
      e) If the Property is un-platted, a metes and bounds description of the Property,

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2014) Page 3 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com woods - taylor

Case 15-80968   Doc 97   Filed 06/09/16   Entered 06/09/16 15:26:44   Desc Main
Document   Page 5 of 9

Property Address 205 E Main St, Ada, OK 74820-5603

f) The scale, the North direction, the beginning point, distance to the nearest intersecting street, and point of reference from which the Property is measured, and

g) If the Property is located in (i) a floodway, (ii) a 100-year flood plain, (iii) a "flood prone area", as defined by the United States Department of Housing and Urban Development (HUD), pursuant to the U.S. Flood Disaster Protection Act of 1973, as amended, or (iv) an area classified by the Federal Emergency Management Agency (FEMA) as having special flood hazards, reflected by Flood Insurance Rate Map covering the area in which the Property is situated; and shall identify the portion of the Property located in such floodway, 100-year flood plain, flood prone area, or flood hazard area. Such Survey shall be in a form sufficient to permit the Title Company issuing the Title Policy to remove printed survey exception from the policy.

3) The legal description of the Property contained in the Survey, if different from the description contained in this Contract, once approved by Buyer and Seller, shall be substituted for the description of the Property and the Contract shall be deemed amended by the substitution of the legal description of the Property contained in the Survey without the necessity of the Parties executing any further amendment to the Contract.

4) Buyer shall have ten (10) days from the receipt of both the Commitment for Title Insurance and the Survey referred to above to examine the same and specify to Seller, in care of Seller's Broker, if applicable, in writing, those matters which Buyer finds objectionable. No matter in the Title Commitment shall be construed as a valid objection to title under this Contract unless it is so construed under the Title Examination Standards of the Oklahoma Bar Association, where applicable. In case of valid objections to the title in the Title Commitment, Seller shall have thirty (30) days, or such additional time as may be agreed to, in writing, by Seller and Buyer, to make reasonable efforts to cure or remove such objections. If Buyer, or Buyer's Broker, if applicable, does not deliver to Seller, in care of Seller's Broker, if applicable, a written notice specifying those items to which Buyer objects within ten (10) days after the receipt by Buyer of the information referred to above, then all of the items reflected in the Title Commitment and Survey shall be considered to be acceptable to Buyer. If such valid objections cannot be satisfied within the time stipulated in this Paragraph, the earnest money shall be refunded to the Buyer, Buyer shall return the abstract to Seller, and this Contract shall be of no further force and effect.

5) On the date of closing of this transaction, as provided in the Contract, Seller shall furnish to Buyer a copy of the Title Commitment, fully marked and initialed by the title company issuing the Owner's Title Policy, which marked Title Commitment, shall reflect the exceptions and provisions to be contained in the Owner's Title policy upon issuance thereof. The Title Commitment shall commit to issue to Buyer an owner's policy of title insurance, covering all of the Property, in the sum of the purchase price, and written on an American Land Title Association (ALTA) Owner's Policy form or its equivalent, and, except for the objections Buyer has agreed to waive showing only the standard printed exceptions and exclusions contained in the said ALTA form of Owner's Title Policy. The premium charged by the Title Company and post closing abstracting expense of providing such Title Policy shall be borne by:

*(check one)* ☐ Buyer ☐ Seller

6) The Title Commitment shall permit deletion of the Survey exceptions, at Buyer's sole cost and expense. Additional extended coverage, including waiver of the standard exceptions and an ALTA zoning endorsement, which reflects the zoning classification of the Property, shall also be provided by Seller, at Buyer's request, and costs for such extended coverage in excess of the base policy premium shall be reimbursed to Seller by Buyer at closing.

7) Seller shall make reasonable efforts, at Seller's sole cost and expense, to cure or remove objections identified in the Survey. If Seller fails to cause all of the objections to be removed or cured prior to the closing date, or if Seller, or Seller's Broker, if applicable, notifies Buyer, in care of Buyer's Broker, if applicable, of Seller's decision not to cure or remove some, or all, of the objections, Buyer's sole remedy shall be to:

a) Terminate this Contract by giving Seller, in care of Seller's Broker, if applicable, written notice thereof, which notice must be given within five (5) days after Seller, or Seller's Broker, if applicable, notifies Buyer, in care of Buyer's Broker, if applicable, of Seller's decision not to cure or remove the objections; in which event, the earnest money, together with all interest earned thereon, shall be returned to the Buyer, and neither Party shall have any further rights, duties, or obligations hereunder; or

b) Elect to purchase the Property subject to the Buyer's objections not so removed or cured; in which event, the objections not removed or cured shall be deemed acceptable to Buyer.

8) Notwithstanding anything to the contrary contained in this Contract, in the event the transaction contemplated by this Contract does not close for any reason except Seller's failure to cure or remove a title objection described in the Survey or wrongful refusal to close, **Buyer shall be responsible for the payment of the cost of the Survey.** Upon closing, any existing Abstract(s) of Title, owned by Seller, shall become the property of Buyer.

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2014) Page 4 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    woods - taylor

Case 15-80968   Doc 97   Filed 06/09/16   Entered 06/09/16 15:26:44   Desc Main Document   Page 6 of 9

Property Address 205 E Main, Ada, OK 74820

**10. TAXES, ASSESSMENTS AND PRORATIONS.**
   A. General ad valorem taxes for the current calendar year shall be prorated through the date of closing, if certified. However, if the amount of such taxes has not been fixed, the proration shall be based upon the rate of levy for the previous calendar year and the most current assessed value available at the time of Closing.
   B. The following items shall be paid by Seller at Closing: (i) Documentary Stamps; (ii) all utility bills, actual or estimated; (iii) all taxes other than general ad valorem taxes which are or may become a lien against the Property; and (iv) any labor, materials, or other expenses related to the Property, incurred prior to Closing which is or may become a lien against the Property.
   C. At Closing all leases, if any, shall be assigned to Buyer and security deposits, if any, shall be transferred to Buyer. Prepaid rent and lease payments shall be prorated through the date of Closing.
   D. If applicable, membership and meters in utility districts to include, but not limited to, water, sewer, ambulance, fire, garbage, shall be transferred at no cost to Buyer at Closing.
   E. If the property is subject to a mandatory Homeowner's Association, dues and assessments, if any, based on most recent assessment, shall be prorated through the date of Closing.
   F. All governmental and municipal special assessments against the property (matured or not matured), not to include Homeowner's Association special assessments, whether or not payable in installments, shall be paid in full by Seller at Closing.

**11. ADDITIONAL PROVISIONS.**
   Chandeliers to stay with property and any attached fixtures
   Appraisal to meet or exceed selling price.

**12. TAX DEFERRED EXCHANGE 1031.** In conformance with Section 1031 of the Internal Revenue Code, it may be the intention of the Seller or Buyer or both to effect a tax-deferred exchange. Either the Seller or Buyer or both may assign his/her rights in the contract to a Qualified Intermediary for the purpose of effecting a tax-deferred exchange. The Parties agree to cooperate and execute the necessary documents to allow either or both Parties to effect such exchange at no additional cost or liability to the other Party. However, any warranties that may be expressed in this contract shall remain and be enforceable between the Parties executing this document.

**13. MEDIATION.** Any dispute arising with respect to the Contract shall first be submitted to a dispute resolution mediation system servicing the area in which the Property is located. Any settlement agreement shall be binding. In the event an agreement is not reached, the Parties may pursue legal remedies as provided by the Contract.

**14. BREACH AND FAILURE TO CLOSE.**
   A. **UPON BREACH BY SELLER.** If the Buyer performs all of the obligations of Buyer, and if, within five (5) days after the date specified for Closing under Paragraph 3, Seller fails to convey the Title or fails to perform any other obligations of the Seller under this Contract, then Buyer shall be entitled to either cancel and terminate this Contract, return the abstract to Seller and receive a refund of the earnest money, or pursue any other remedy available at law or in equity, including specific performance.
   B. **UPON BREACH BY BUYER.** If, after the Seller has performed Seller's obligation under this Contract, and if, within five (5) days after the date specified for Closing under Provision 3, the Buyer fails to provide funding, or to perform any other obligations of the Buyer under this Contract, then the Seller may, at Seller's option, cancel and terminate this Contract and retain all sums paid by the Buyer, but not to exceed 5% of the purchase price as liquidated damages, or pursue any other remedy available at law or in equity, including specific performance.

**15. INCURRED EXPENSES AND RELEASE OF EARNEST MONEY.**
   A. **INCURRED EXPENSES.** Buyer and Seller agree that any expenses, incurred on their behalf, shall be paid by the Party incurring such expenses and shall not be paid from earnest money.
   B. **RELEASE OF EARNEST MONEY.** In the event a dispute arises prior to the release of earnest money held in escrow, the escrow holder shall retain said earnest money until one of the following occur:
      1) A written release is executed by Buyer and Seller agreeing to its disbursement;
      2) Agreement of disbursement is reached through Mediation;
      3) Interpleader or legal action is filed, at which time the earnest money shall be deposited with the Court Clerk; or
      4) The passage of thirty (30) days from the date of final termination of the Contract has occurred and options 1), 2) or 3) above has not been exercised; Broker escrow holder, at Broker's discretion, may disburse earnest money. Such disbursement may be made only after fifteen (15) days written notice to Buyer and Seller at their last known address stating the escrow holder's proposed disbursement.

**16. DELIVERY OF ACCEPTANCE OF OFFER OR COUNTEROFFER.** The Buyer and Seller authorize their respective Brokers, if applicable, to receive delivery of an accepted offer or counteroffer.

**17. NOTICE.** Any notice provided for herein shall be given in writing, sent by (a) personal delivery, (b) United States mail, postage prepaid, or (c) by facsimile, to the Escrow Agent, with copies to the other Parties, addressed as follows:

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2011)                                                                                              Page 5 of 6

Property Address 205 E Main St, Ada, OK 74820-5603

To Escrow/Closing Agent:
HOME TITLE OF ADA
c/o
BART MCCORTNEY

Phone: _____
Buyers:
THE TAGDV TRUST
THE TAGDV TRUST
c/o  RR 5 Box 550
     Coalgate OK 74538

Phone: 436-9292
FAX: 877 755-2413
Email: _____

FAX: _____
Sellers:
DAREL E. TAYLOR
*Darel E. Taylor*
c/o _____

Phone: _____
FAX: _____
Email: _____

or such other address as shall hereafter be designated in writing.

18. **BROKER RELATIONSHIP DISCLOSURE/COMMISSION.** Parties acknowledge and confirm that Broker(s) providing brokerage services to the Parties have described and disclosed their duties and responsibilities to the Parties prior to the Parties signing this Contract.

   ☐ (Applicable for in-house transactions only) Parties acknowledge and confirm that the broker is providing brokerage services to both Parties to the transaction prior to the Parties signing this Contract. Parties further acknowledge receipt of Estimate of Costs associated with this transaction and that a Contract Information Booklet has been made available to the Parties in print, or at www.orec.ok.gov.

   Seller acknowledges and confirms that the Broker providing brokerage services to the seller has described and disclosed their duties and responsibilities to the seller prior to the seller signing this Contract.

   It is further acknowledged and agreed by the Parties that the ☐ Buyer ☒ Seller (check one) will pay the Listing Broker a commission equal to ___6___ of the purchase price at Closing for services rendered in this real estate transaction.

19. **EXECUTION BY Parties.**

   AGREED TO BY BUYER:
   On this Date: 5/29/16
   Buyer's Name (Print) THE TAGDV TRUST
   Buyer's Signature _____
   Buyer's Name (Print) Todd Woods
   Buyer's Signature _____

   AGREED TO BY SELLER:
   On this Date: 6-2-16
   Seller's Name (Print) DAREL E. TAYLOR
   Seller's Signature *Darel E. Taylor*
   Seller's Name (Print) _____
   Seller's Signature _____

   **TERMINATION OF OFFER.** The above Offer shall automatically terminate on ___5/31___ at 5:00 p.m., unless withdrawn...

---

## EARNEST MONEY RECEIPT AND INSTRUCTIONS

Receipt of $ 1,000.00   ☒ Check ☐ Cash as earnest money Deposit, to be deposited in accordance with the terms and conditions of PURCHASE PRICE, EARNEST MONEY AND SOURCE OF FUNDS Provision. Broker(s) acknowledges receipt of earnest money and Listing Broker, if applicable, shall deposit said funds in accordance with Paragraph 2 of this Contract. If deposited in an escrow account other than the Listing Broker, the Listing Broker, if applicable, shall provide a copy of receipt to the Selling Broker.

Date: 5/29/16
*Kathy Woods*
Selling Broker/Associate Signature
KATHY WOODS
Selling Broker/Associate (PRINT NAME)
SWEENEY & ASSOCIATES LLC
Company Name

1320 STONEBRIDGE ADA, OK 74820
Address
(580)-421-9911
Phone

Date: 6/2/16
*D Moore*
Listing Broker/Associate Signature
DEANNA MOORE
Listing Broker/Associate (PRINT NAME)
_____
Company Name

_____
Address
_____
Phone

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL IMPROVED (11-2014)                                                                                              Page 6 of 6
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                      woods - taylor

**OKLAHOMA REAL ESTATE COMMISSION**
*This is a legally binding Contract; if not understood, seek advice from an attorney.*

## COMMERCIAL FINANCING

This financing supplement, which is attached to and part of the Oklahoma Uniform Contract of Sale of Real Estate relates to the following described real estate:
___205 E Main St, Ada, OK 74820-5603_____

(Check Applicable)

☒ **Financing Contingency**
This contract is expressly contingent upon Buyer obtaining acceptable financing within __25__ days of the Time Reference Date. If, at Buyer's sole discretion, Buyer is unable to obtain satisfactory financing within the time period specified above, Buyer may cancel and terminate this Contract and receive a refund of the earnest money by delivering written notice to the Seller, in care of Seller's Broker, if applicable, within twenty-four (24) hours of the expiration of the time period specified in this paragraph.

☐ **Mortgage Carried by Seller (Amortized)**
The balance of the purchase price shall be paid in the following manner: At Closing, Buyer shall execute a negotiable promissory note payable to the order of Seller in the sum of $ _____ , payable in _____ equal monthly installments of $ _____ , including principal and interest, beginning on the _____ day of _____ , _____ and continuing on the _____ day of each month thereafter with interest at the rate of _____ percent (%) per annum on the unpaid balance.

☐ **Mortgage Carried by Seller (One Payment)**
The balance of the purchase price shall be paid in the following manner: At Closing, Buyer shall execute a negotiable promissory note payable to the order of Seller in the sum of $ _____ , due and payable on _____ , _____ with interest at the rate of _____ percent (%) per annum.

☐ **Mortgage Carried by Seller Amortized With Balloon Payment**
The balance of the purchase price shall be paid in the following manner: At Closing, Buyer shall execute a negotiable promissory note payable to the order of Seller in the sum of $ _____ , payable in _____ equal monthly installments of $ _____ , including principal and interest, beginning on the _____ day of _____ , _____ and continuing on the _____ day of each month thereafter with an interest rate of _____ percent (%) per annum on the unpaid balance. Said note shall be amortized over _____ months with the entire unpaid principal balance (Balloon payment) to be paid in full as the _____ payment.

<u>**The Mortgage Documents carried by Seller shall include, but not be limited to, the following provisions:**</u>
   i)   prepayment at any time without penalty
   ii)   acceleration of the balance due upon the transfer of the title to the Property to any third Party
   iii)   the delivery of a _____ mortgage on the Property as security
   iv)   the promissory note shall be personally guaranteed by _____
   v)   the mortgage shall contain the following partial release provision(s): _____
   vi)   additional provision(s): _____

The remainder of the purchase price shall be paid in cash at Closing.

The note and mortgage to be furnished by Seller and delivered to Buyer not later than _____ days (ten [10] days if left blank), prior to Closing. The expense of preparing these documents shall be paid by _____ , not to exceed a total of $ _____ .

| Buyer's Signature | Date 5/29/16 | Seller's Signature | Date 6-2-16 |
|---|---|---|---|
| **THE TAGDV TRUST** | | **DAREL E. TAYLOR** | |

| Buyer's Signature | Date | Seller's Signature | Date |
|---|---|---|---|

This form was created by the Oklahoma Real Estate Contract Form Committee and approved by the Oklahoma Real Estate Commission.
OREC COMMERCIAL FINANCING (11-2014)                                                                     Page 1 of 1

Sweeney & Associates, 1329 Stonebridge Ada, OK 74820                   Phone: (580)421-9911     Fax: (580)421-9111     woods - taylor
Shane Sweeney         Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com